IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW JOHN PROUGH, | § § § | |
| Plaintiff, | § § | No. 3:23-cv-2182-X-BN |
| V. | § § | |
| DALLAS COUNTY JAIL, ET AL., | § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Matthew John Prough, a former inmate at the Dallas County jail, filed a *pro se* complaint under 42 U.S.C. § 1983 against the jail, two supervisory officials in the Dallas County Sheriff's Office, the Dallas County District Clerk, and the court coordinator for a state judge, alleging false imprisonment for failure to release him for approximately three months after the state court entered a judgment of time served. *See* Dkt. Nos. 3, 4, 31-33, & 36.

United States District Judge Brantley Starr referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing Prough's allegations, specifically that the defendants allegedly did not timely release him – but held him for more than three months – after the state court entered a judgment of time served, the Court granted Prough's request to substitute Dallas County as the real party in interest for the jail and determined that the complaint should be served. *See* Dkt. No. 36 (citing *Porter v. Epps*, 659 F.3d 440,

445 (5th Cir. 2011) ("Detention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.'" (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)))).

The Court therefore ordered that summons be issued and that process be served. *See* Dkt. Nos. 37-45. And Defendants Dallas County, Frederick Robinson, Felicia Pitre, Kissi Jones, and Charlene Randolf responded by moving to dismiss Prough's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 46.

Prough responded to the motion to dismiss by filing a motion for leave to amend [Dkt. No. 50] and a motion to strike the motion to dismiss [Dkt. No. 51].

The Court declined Prough's request to strike the motion to dismiss but recharacterized that filing as a response to the motion and ordered Defendants to respond to the motion for leave to amend. *See* Dkt. No. 52.

Defendants did. *See* Dkt. No. 55. Prough then moved for an extension of time (at least 30 days) "to allow counsel [identified later in the motion] to properly acquaint herself with the facts of the case." Dkt. No. 56. And Prough again moved for leave to amend. *See* Dkt. No. 57; *see also* Dkt. No. 62 (Defendants' response to that filing).

The Court granted Prough's last motion for extension in part and ordered that any attorney that he retained must file an appearance in this proceeding by June 13, 2025. *See* Dkt. No. 59.

No appearance has been filed. The Court has not heard from Prough since his last motion – and orders sent to Prough at the last address that he provided the Court

have been returned as undeliverable. *See* Dkt. Nos. 59-61 & 63. In short, there is no reason to further delay the disposition of this case.

So, for the reasons and to the extent set out below, the Court should grant the motion to dismiss, deny the motions for leave to amend, and dismiss this lawsuit.

## Legal Standards

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions, and, so, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

"Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in futility." *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) (citations omitted).

As to futility, "[i]f the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

In this regard, the Court must "ask whether, in [a] proposed amended complaint, [the plaintiff] has pleaded 'factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *cf. Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) ("Where the district court's denial of leave to amend was based solely on futility, [the United States Court of Appeals for the Fifth Circuit] applies a de novo standard of review identical, in practice, to the standard used for reviewing a

dismissal under Rule 12(b)(6)." (cleaned up)).

## Analysis

Prough seeks monetary damages against a municipality and public officials or employees (in their official and individual capacities) based on allegations that he was kept in custody after he was entitled to be released.

And "the Fifth Circuit has made clear that overdetention implicates due process" and that such claims "fall within the Fourteenth Amendment." *Graces Robles v. Ramirez*, 1:23-CV-981-RP, 2024 WL 3174388, at *6 (W.D. Tex. June 25, 2024) (citing *McNeal v. LeBlanc*, 90 F.4th 425, 431 (5th Cir. 2024) ("We recently held that it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process." (cleaned up)); *Hicks v. LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023) ("Clear as day, the government cannot hold an inmate without the legal authority to do so, for that would deprive a person of his liberty without due process of law." (cleaned up)); *Parker v. LeBlanc*, 73 F.4th 400, 407 (5th Cir. 2023) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." (cleaned up)); *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) ("[I]t is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process.")); *see also id.* ("In 2023, the Fifth Circuit stated that 'the right to timely release was clearly established well before 2017' and cited a case where the Fifth Circuit discussed overdetention as a due process issue." (quoting

*Hicks*, 81 F.4th at 504 (citing *Douthit*, 619 F.2d at 532))); *cf. Holman v. Williamson Cnty.*, A-24-CV-1165-RP, 2025 WL 623657, at *5 (W.D. Tex. Feb. 18, 2025) ("[T]imely release is not the same as instantaneous release: it is reasonable for jailers to have some administrative delay in processing an inmate's discharge. *Crittindon*, 37 F.4th at 188 (citing *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968) (a jailer does not commit an instant tort at the moment the prisoner is entitled to release; instead a jailer's duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which is prisoner is detained.))." (cleaned up)).

But, even if Prough can allege a plausible Fourteenth Amendment claim based on overdetention against someone – and his current allegations as amended do not make this showing – he must do more than that to survive dismissal with prejudice (that is, without further leave to amend) of such a claim against these defendants.

First, to the extent that Prough claims that his alleged overdetention was due to negligence, *see, e.g.*, Dkt. No. 3 at 3 (alleging that one defendant "negligently disobeyed the State's order to release" him, while another defendant "negligently disregarded" court filings as to the release paperwork (cleaned up)), "defendants may not be held liable for their alleged negligent acts under § 1983," *Isom v. Geo Grp. Inc.*, 335 F. App'x 362, 363 (5th Cir. 2009) (per curiam) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.")).

Next, Prough has sued four individual officials or employees of Dallas County in their individual and official capacities. *See, e.g.*, Dkt. No. 31 at 3-11. "The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). And, like here, where "'a defendant government official is sued in his individual and official capacity, and the [municipality] or state is also sued,' the 'official-capacity claims and the claims against the governmental entity essentially merge.'" *Harmon v. Dall. Cnty., Tex.*, 927 F.3d 884, 891 (5th Cir. 2019) (quoting *Turner*, 229 F.3d at 485).

So the standards applicable to pleading municipal liability – here, liability against Dallas County, discussed in detail below – apply to Prough's official-capacity claims against the individual defendants. *See, e.g.*, *Byrum v. City of Mesquite*, 126 F. App'x 670, 671 (5th Cir. 2005) (per curiam) ("A governmental entity or municipality, as well as officers thereof acting in their official capacity, can be held liable under § 1983 only if official policy or custom caused the deprivation of a constitutional right." (citations omitted)).

As to the individual-capacity claims, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

And, "[u]nder § 1983, officials are not vicariously liable for the conduct of those under their supervision. Supervisory officials are accountable for their own acts of

deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (per curiam) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)).

But, to survive a Rule 12(b)(6) challenge, individual or supervisory liability, as applicable, must be pleaded consistent with the legal standards set out above.

And, here, as to individual liability based on a defendant's personal involvement or supervisory liability based on a supervisor's own acts of deliberate indifference or his or her implementation of policy, Prough offers plenty of labels and conclusory assertions and statements, *see, e.g.*, Dkt. No. 31 at 3-11, but provides not enough factual content "to raise a right to relief [against a defendant in his or her individual or supervisory capacity] above the speculative level," *Twombly*, 550 U.S. at 555.

That is, Prough's pleadings lack allegations that could show personal liability or deliberate inference that are more than conclusory, to "allow[] the court to draw the reasonable inference that [an individual] defendant is liable [personally or as a supervisor] for the misconduct alleged" – Prough's alleged overdetention in violation of the Fourteenth Amendment. *Iqbal*, 556 U.S. at 678.

So Prough's individual-capacity claims should be dismissed.

As to the official-capacity claims merged with the claims against the County, "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez*

*II*") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to such a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

To plausibly allege that a policy was the moving force,

> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional

>act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [her] claim also fails the other two *Monell* prongs." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 & n.11 (5th Cir. 2021) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for

it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (cleaned up).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

This established framework has been applied by other Texas federal district courts to Section 1983 overdetention claims against municipalities. *See, e.g.*, *Graces Robles*, 2024 WL 3174388, at *13 (finding *Monell* liability was plausibly alleged where the plaintiffs pleaded that final policymakers "promulgated official policies in their respective counties that resulted in Plaintiffs' overdetentions").

But, here, Prough fails to allege that his overdetention was due to an official policy of Dallas County.

And a municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to [its] policymaker." *Peña*,

879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at *5 (quoting *Piotrowski*, 237 F.3d at 582).

A pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the scope of the allegations pleaded by Prough – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson*, 80 F.4th at 710 (cleaned up).

So the official-capacity claims and the claims against County should be dismissed. *See Brown*, 985 F.3d at 497 & n.11; *Zarnow*, 614 F.3d at 168-69.

And the Court should deny as futile Prough's motions for leave to amend – to which he failed to attach proposed amended pleadings – because those motions fail to show how Prough would amend his claims such that they would no longer be subject to dismissal for the reasons set out above.

In sum, this lawsuit should be dismissed with prejudice.

But the opportunity file objections to these findings, conclusions, and recommendation (as further explained below) allows Prough another opportunity to show the Court that it should not dismiss the claims with prejudice but instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

**Recommendation**

The Court should grant Defendants Dallas County, Frederick Robinson, Felicia Pitre, Kissi Jones, and Charlene Randolf's motion to dismiss Plaintiff Matthew John Prough's claims under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 46], deny as futile Prough's motions for leave to amend [Dkt. Nos. 50 & 57], and dismiss this lawsuit with prejudice unless Prough files timely objections that show a

basis to amend to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 23, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE